**Opinion filed March 31, 2021**



# In The

# Eleventh Court of Appeals

_____

## No. 11-20-00226-CV

_____

## IN THE INTEREST OF S.N.D. AND L.E.D., CHILDREN

**On Appeal from the 446th District Court**
**Ector County, Texas**
**Trial Court Cause No. E-19-084-PC**

## M E M O R A N D U M   O P I N I O N

This is an appeal from orders in which the trial court terminated the parental rights of the mother of S.N.D. and L.E.D.[1]  The mother filed an appeal.  On appeal, she presents four issues in which she challenges the legal and factual sufficiency of the evidence to support the trial court's findings.  We affirm the trial court's orders of termination.

---

[1]We note that the father of S.N.D. voluntarily relinquished his parental rights and that the father of L.E.D. was appointed as L.E.D.'s permanent managing conservator.  Neither father filed a notice of appeal.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2020). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court found that Appellant had committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), and (O). Specifically, the trial court found that Appellant had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being, that Appellant had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being, and that Appellant had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parents for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of each child.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the trial court is the sole arbiter of the credibility

2

and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

*Evidence Presented at Trial*

The record shows that the Department became involved with Appellant shortly after she gave birth to L.E.D. According to the intake allegations, both Appellant and L.E.D. tested positive for methamphetamine at the time of L.E.D.'s birth. Appellant again tested positive for methamphetamine about three weeks later. The mother's urine test results indicated a methamphetamine level of 145,266 ng/ml, and her hair follicle test results indicated a methamphetamine level of 17,059 pg/mg.

During the initial investigation in the intake allegations, the Department located Appellant's other child, S.N.D., at the home of that child's paternal grandparents. S.N.D. was eight years old and had lived with her paternal

grandparents since she was a few months old. Although Appellant was still married to S.N.D.'s father and Appellant and S.N.D.'s father moved in and out of the paternal grandparents' home on a regular basis, S.N.D.'s father was not L.E.D.'s father. Both children were removed. S.N.D. was placed with her paternal grandparents, and L.E.D. was initially placed with maternal relatives but was ultimately placed with his biological father after DNA testing confirmed paternity.

After the children were removed, Appellant and the Department participated in the creation of a family service plan. The trial court made the family service plan an order of the court. Appellant, however, did not comply with the provisions of her service plan. She failed to submit to drug testing as required, and she tested positive for methamphetamine and amphetamines. After her release from jail, Appellant tested positive for methamphetamine and amphetamines on both a urine and a hair follicle test. The methamphetamine levels in these tests were 8,651 ng/ml and 24,760 pg/mg, respectively. In addition to her drug-related issues, Appellant failed to complete counseling, failed to keep the Department apprised of her address and the people with whom she lived, failed to complete a parenting class, and failed to visit the children on a regular basis after she was released from jail.

The Department's plans for S.N.D. were for her to be adopted by her paternal grandparents, who were both actively pursuing an adoption license. The Department's plans for L.E.D. were to transfer permanent managing conservatorship to L.E.D.'s father. The Department's conservatorship caseworker testified that she believed it would be in S.N.D.'s and L.E.D.'s best interest for Appellant's parental rights to be terminated.

*Analysis*

In her first, second, and third issues, Appellant challenges the legal and factual sufficiency of the evidence to prove grounds (D), (E), and (O). We need only address her challenge to the trial court's finding under Section 161.001(b)(1)(E). *See In re*

4

*N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either of these grounds).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 34 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use may constitute evidence of endangerment. *Id.* "A mother's use of drugs during pregnancy may amount to conduct that endangers the physical and emotional well-being of the child." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). A parent's drug addiction and its effect on the parent's life and ability to parent a child may establish an endangering course of conduct. *Id.* at 125–26 (citing *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ)).

Based upon evidence of Appellant's use of methamphetamine while she was pregnant with L.E.D. and Appellant's continued use of methamphetamine thereafter, the trial court could have found by clear and convincing evidence that Appellant had engaged in a course of conduct that endangered her children. We hold that the evidence is legally and factually sufficient to uphold the trial court's finding as to Appellant under subsection (E). Accordingly, we overrule Appellant's second issue.

Because only one statutory ground is necessary to support termination and because we have upheld the trial court's finding as to subsection (E), we need not reach Appellant's first and third issues. *See* FAM. § 161.001(b)(1); *N.G.*, 577 S.W.3d at 234–35; *see also* TEX. R. APP. P. 47.1.

In her fourth issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's findings that termination of her parental rights would be in the best interest of S.N.D. and L.E.D.

With respect to the children's best interest, the evidence, as set forth above, shows that Appellant used methamphetamine while pregnant with L.E.D. and continued to use methamphetamine after her children were removed from her care. S.N.D. had lived with her paternal grandparents almost her entire life—while Appellant and S.N.D.'s father moved in and out of her life. Appellant failed to complete the services that were required for the children to be returned to her, and she failed to obtain and maintain a stable environment for her children. Instead, as succinctly stated by the conservatorship worker, Appellant "has continued to choose drugs over [S.N.D.] and [L.E.D.], and she minimizes the reasons for removal. She has had visitations with them, and the visits haven't been going very well."

We hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in S.N.D.'s and L.E.D.'s best interest. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of those involved, the plans for the children by the Department, Appellant's continued use of methamphetamine, and the instability of Appellant's situation, we hold that the evidence is legally and factually sufficient to support the finding that termination of Appellant's parental rights is in the best

interest of S.N.D. and the finding that termination of Appellant's parental rights is in the best interest of L.E.D.  *See id.*  We defer to the trial court's findings as to the children's best interest, *see C.H.*, 89 S.W.3d at 27, and we cannot hold in this case that the findings as to best interest are not supported by clear and convincing evidence.  We overrule Appellant's fourth issue.

*This Court's Ruling*

We affirm the orders of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


March 31, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.